**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**LETONY J. CARTER**                                                                      **PLAINTIFF**

**VS.**                                                                      **NO. 3:14-cv-00595-LRA**

**SHERIFF TYRONE LEWIS, in his official capacity,**
**JONATHAN BRISTER, in his individual capacity, and**
**JOHN and JANE DOES 1-24**                                                  **DEFENDANTS**

<u>**FIRST AMENDED COMPLAINT**</u>
**(Jury Trial Demanded)**

_____

COMES NOW the Plaintiff, LeTony J. Carter, in the above styled and referenced cause, by and through his undersigned counsel, and files this his First Amended Complaint against the aforementioned Defendants, and alleges as follows:

<u>PARTIES</u>

1.

Plaintiff, LETONY J. CARTER, is a person of the full age of majority and resident of Hinds County, Mississippi.

2.

Defendant SHERIFF TYRONE LEWIS, was at all times referenced herein, the duly elected Sheriff of Hinds County, Mississippi, and is named a defendant in his official capacity. He may be served with process by effecting the same upon his counsel of record in this matter, J. Chadwick Williams of Allen, Allen, Breeland & Allen, PLLC, P. O. Box 751, Brookhaven, Mississippi 39602.

3.

Defendant JONATHAN BRISTER, was at all times referenced herein, employed as a Deputy Sheriff of Hinds County, Mississippi, and is named a defendant in his individual capacity. He may

be served with process by effecting the same upon his counsel of record in this matter, J. Chadwick

Williams of Allen, Allen, Breeland & Allen, PLLC, P. O. Box 751, Brookhaven, Mississippi 39602.

4.

Defendants JOHN and JANE DOES 1-24, whose identities are unknown to the Plaintiff at

this time, are upon information and belief, deputies of the Hinds County Sheriff's Department,

and/or officers and/or trainees employed at the Hinds County Detention Center, and/or employed by

Hinds County, as personnel assigned to the Hinds County Correctional Facility.  All allegations and

claims asserted herein against the named Defendants are incorporated herein by reference against

JOHN and JANE DOES 1-24.  Said JOHN and JANE DOES 1-24, when their identities are known,

will be identified by name and joined in this action, if necessary, pursuant to the Federal Rules of

Civil Procedure.

## JURISDICTION

5.

The Plaintiff herein invokes this Court's federal question jurisdiction pursuant to 28 United

States Code §§ 1331 and 1343 to obtain a judgment for the costs of suit, including reasonable

attorneys' fees, and damages suffered and sustained by Mr. Carter, and caused by the blatant

violation of the rights, privileges and immunities of the Plaintiff, as guaranteed by the Eighth and

Fourteenth Amendments to the Constitution of the United States of America and by the applicable

Federal Statutes, more particularly, 42 United States Code §§ 1983 and 1985(3).

## VENUE

6.

Venue is proper in this jurisdiction and district pursuant to 28 United States Code § 1391(b)

in that the alleged acts and omissions of the Defendants occurred exclusively within the territorial

limits of this judicial district and division.

<u>FACTS</u>

7.

On or about October 30, 2013, Mr. Carter was in the custody of the Hinds County Sheriff and being held in Cell 5502, Pod B-3 at the Hinds County Detention Center in Raymond, Mississippi. On this day, Mr. Carter was brutally assaulted by masked fellow inmates during a period of administrative "lock-down." During this assault Mr. Carter was beaten severely, suffering a broken jaw and broken nose. When the beating took place, Pod B-3 was on administrative lock-down, meaning all cells were locked, and no inmates were to be moving about the common area of the pod.

8.

Just prior to the assault and still during the administrative lock-down, Jonathan Brister, a jailer at the Hinds County Detention Center, was overheard calling for Cell 5502 to be unlocked. It is unknown whether the door to Cell 5502 was in fact unlocked remotely in accordance with Defendant Brister's request or whether Defendant Brister "popped" the lock to Cell 5502 in the manner previously described by this Court[1] or by Sheriff Lewis himself in a 2012 interview with a local television news station[2]. Upon information and belief, the inmates who entered Mr. Carter's cell had "popped" the locks to their cells, allowing them to position themselves outside of Mr. Carter's cell and prepare to deliver the beating.

9.

After the beating, Mr. Carter complained of pain in his jaw, but was not immediately taken for medical assistance. Approximately one day after the beating, the jail nurse noticed Mr. Carter's

---

1 See Memorandum Opinion and Order, Dkt. No. 63 in *Tory Bancurtis Ellis v. Major Mary Rushing*, Cause No. 3:11-cv-749-LRA, a true and correct copy of which is attached hereto as Exhibit A

2 See WAPT's report entitled "Guard: Inmates escaping cells at Hinds Co. Detention Center", found at http://www.wapt.com/news/central-mississippi/jackson/Guard-Inmates-escaping-cells-at-Hinds-Co-Detention-

swollen face and made arrangements for him to be transported to the Central Mississippi Medical

Center, where his shattered jaw was wired shut and his broken nose set.

## COUNT I
## ACTION FOR DEPRAVATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

10.

The Plaintiff hereby incorporates by reference and re-alleges the information set forth in the

preceding paragraphs as if expressly rewritten herein.  The Plaintiff makes the following

allegations in Count I with respect to all Defendants:

11.

At all times material hereto, the Defendants, both named and unnamed, were vested with

authority and the non-delegable duty of adhering to, complying with, and enforcing the laws of the

United States of America and the State of Mississippi.  Consequently, while acting under color of

state law, these Defendants commenced to engage in a course of conduct and to implement a policy,

custom, usage, plan, practice, and/or design wherein the rights, privileges, and immunities of Mr.

Carter were violated.  Said customs and policies evidence a deliberate indifference on the part of the

Defendants to the constitutional rights of Mr. Carter.  Specifically these Defendants, jointly and

severally, engaged in a course of conduct that resulted in the violation of Mr. Carter's rights under

the Eighth and Fourteenth Amendments to be free of pretrial conditions that constitute punishment

and to be provided with due process of law.  Mr. Carter suffered physical injuries as described above

as a result of the Defendants failure to protect Mr. Carter from an identified, known harm.

Additionally, these Defendants, both named and unnamed, failed to adequately train staff or hire

properly trained staff, or receive proper training as to the supervision of individuals in the custody of

the government, all of which caused or contributed to the unreasonably unsafe environment which

Center/15309504, a true and correct copy of which is attached hereto as Exhibit B.

lead to Mr. Carter's injuries.

12.

These Defendants, named and unnamed, deliberately and/or negligently implemented a policy, custom, usage, plan, practice, and/or design wherein the rights, privileges, and immunities of Mr. Carter and other inmates were violated.  Upon information and belief, in the five years prior to Mr. Carter's beating other individuals have been treated in a similar fashion by these Defendants.  Upon information and belief, these Defendants were placed on notice that there was a need for increased security at the Hinds County Detention Center.  In truth and in fact, Sheriff Tyrone Lewis and others, prior to and since this incident, have publicly expressed the need for extra security measures to be taken and repairs to locking mechanisms to prevent the exact type of harm that befell Mr. Carter.  However, the obvious need for increased staff and security was previously ignored as a result of these Defendants' unreasonable and unconstitutional custom, usage, and/or policy. These Defendants' continued policy of inadequate training, security, and supervision exhibited a deliberate indifference to Mr. Carter's constitutional rights which resulted in the injuries sustained by Mr. Carter.

13.

The Defendants, named and unnamed, bear a duty to exercise reasonable care in the hiring, training and supervision of those working at the Hinds County Detention Center.  This duty includes a responsibility to train correctional officers and other agents to properly monitor, observe and report the deprivation of constitutional rights of individuals in custody to the proper legal authorities.  The Defendants also bear the duty to provide individuals in custody with a secure environment.  These Defendants bear the responsibility of hiring deputies, jailers, and other staff with the requisite education, training, and expertise to provide reasonable and adequate security for individuals in

custody.  These Defendants, jointly and severally, breached each of these duties for failing to provide proper training to their agents, by failing to have appropriate procedures and protocols in place to ensure adequate protection of civil rights, and by failing to supervise their staff.  These Defendants also failed to update policies, repair jail facilities, and to provide peer review or adequate supervision of their staff.  These breaches exhibit a deliberate indifference to the constitutional rights of Mr. Carter, and directly and proximately resulted in the harms and damages alleged herein.

14.

At all times material hereto, these Defendants, named and unnamed, and their agents, representatives, and employees acted pursuant to policies, regulations, and decisions officially adopted or promulgated by those persons whose acts may fairly be said to represent official policy of or were pursuant to a governmental custom, usage or practice of these Defendants and their agents, representatives, and employees.

15.

As a direct and proximate consequence of these Defendants' aforementioned conduct, wherein such Defendants deprived Mr. Carter of certain rights guaranteed by the Constitution of the United States and the Constitution of the State of Mississippi, Mr. Carter experienced pain, suffering, humiliation, degradation, and severe emotional and mental anguish and distress.  Thus, these Defendants, both named and unnamed are jointly and severally liable for the deprivation of Mr. Carter's constitutional rights as outlined herein.

**COUNT II.**
**ACTION FOR CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (42 U.S.C. § 1985)**

16.

The Plaintiff hereby incorporates by reference and re-alleges the information set forth in the

preceding paragraphs as if expressly rewritten herein.

17.

At all times material hereto, all Defendants, named and unnamed, and their agents, representatives, and employees did conspire to deprive the Plaintiff of the rights, privileges, and immunities guaranteed by the Constitution of the United States and the Constitution of the State of Mississippi.  Specifically, these Defendants, conspired as outlined in preceding paragraphs of this Complaint engage in a course of conduct that resulted in the violation of Mr. Carter's rights as outlined hereinabove.

18.

As a direct and proximate consequence of these Defendants' aforementioned conduct, wherein such Defendants conspired to deprive Mr. Carter of certain rights guaranteed by the Constitution of the United States, Mr. Carter experienced pain, suffering, humiliation, degradation, and severe emotional and mental anguish and distress.  Thus, these Defendants, both named and unnamed are jointly and severally liable for the deprivation of Mr. Carter's constitutional rights as outlined herein.

## COUNT III.

### VIOLATION OF CIVIL RIGHTS BY UNREASONABLE USE OF FORCE

19.

The Plaintiff hereby incorporates by reference and re-alleges the information set forth in the preceding paragraphs as if expressly rewritten herein.

20.

By allowing or directing the masked inmates referenced above to brutally beat the Plaintiff, Defendant Brister and Defendants John and Jane Does 1-24 violated Mr. Carter's civil

rights as guaranteed by the United States Constitution, including but not limited to the right to due process of the law, the right to be free from cruel and unusual punishment, and the right to security of the person, directly and proximately causing damage for which Mr. Carter is entitled to recover.

<u>PRAYER FOR RELIEF</u>

21.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, LETONY J. CARTER, prays that upon the filing of this Complaint that this Honorable Court will set this matter for a full and complete trial by jury on the merits and upon completion of the same, enter a judgment granting the following relief:

a.   enter a judgment in favor of the Plaintiff and against all Defendants, jointly and severally, for the actual or compensatory damages sustained by the Plaintiff, LeTony J. Carter, pursuant to 42 United States Code sections 1983 and 1985, and the Eighth and Fourteenth Amendments to the Constitution of the United States of America in an amount to be determined by a jury;

b.   enter a judgment in favor of the Plaintiff and against the Defendants individually, jointly and severally, for punitive or exemplary damages, for the outrageous, willful, wanton and intentional conduct that resulted in gross or reckless indifference to the welfare, safety, rights, privileges, and/or immunities of the Plaintiff, LeTony J. Carter, in an amount to be determined by a jury;

f.   enter a judgment against all Defendants, jointly and severally, for the Plaintiff's reasonable attorney's fees pursuant to 42 United States Code section 1988, all costs of this action and related litigation expenses and expert fees;

g.   enter a judgment in favor of the Plaintiff and against the Defendants, jointly and severally, for such other relief, general or specific, as the Court may deem appropriate, just, and equitable in the premises.

Respectfully submitted, this the 10th day of August, 2015.

By:   **LETONY J. CARTER,** *Plaintiff*


    /s/ J. Matthew Eichelberger
J. Matthew Eichelberger, MS Bar No. 101060


    /s/ Brenda Jackson Patterson
Brenda Jackson Patterson, MS Bar No. 9773

J. Matthew Eichelberger
Eichelberger Law Firm, PLLC
775 N. Congress St.
Jackson, MS 39202
Telephone: 601-292-7940
Facsimile: 601-510-9103
matt@ike-law.com

Brenda Jackson Patterson
Attorney at Law
P.O. Box 6577
Jackson, MS 39212
Telephone: 601-371-0443
brendajackpattersonatty@comcast.net

*COUNSEL FOR THE PLAINTIFF*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TROY VANCURTIS ELLIS                                    PLAINTIFF

VS.                                        CIVIL ACTION NO. 3:11cv749-LRA

MAJOR MARY RUSHING                                      DEFENDANT

MEMORANDUM OPINION AND ORDER

This case came before the Court for trial on January 20, 2015.  Plaintiff Troy
Vancurtis Ellis testified on his own behalf and presented the testimony of his witnesses,
inmates Sylvester Wright, Jr., and Ervin Jones.  All Defendants other than Major Mary
Rushing were previously dismissed by Memorandum Opinion and Order [45] entered on
March 27, 2014.  Defendant Rushing testified on her own behalf and offered into
evidence the Policy and Procedures Manual of the Hinds County Detention Center
(HCDF) [59]; General Order 92-01-17 of the Hinds County Sheriff's Office [60], and the
Inmate Records of Ellis [61].

Ellis is a state inmate who was formerly housed at the HCDF in Raymond,
Mississippi, as a pretrial detainee.  He filed this § 1983 action alleging unconstitutional
conditions at the jail, both while he was held in the "holding tank" for approximately 16
days in October 2011, and while he was housed in Pod A2 from October 2011 until
October 2014.

**Exhibit A**

## Evidence Presented

Plaintiff testified regarding the facts upon which his Complaint is based:

> When I arrived in the HDCF the things I brought to light was
> the inhumane conditions of being in the booking holding cell
> for the excess of 16 days, sleeping on concrete floors, being
> subject to raw sewage coming out of the center of the floor.
> And when I got to A2 pod, being able — well, witnessing
> inmates pop out of their cells, doing violent things to other
> inmates and like I say, making it known to the staff and they
> did nothing.  So through constant requests and grievances, I
> filed this 1983.

Regarding what Defendant Rushing did, Plaintiff testified:

> Well, Ms. Rushing in her capacity as being over the facility
> had full knowledge of the incidents and yet did nothing.  Her
> and her subordinates.

Plaintiff also testified that 20 other inmates were in the holding tank with him.  When

testifying regarding his claims in A2 pod, Plaintiff testified:

> Popping cell doors, making threats, acts of violence, taking
> other inmates' canteen, just doing all sorts of things.  And the
> deputies under Mrs. Rushing's administration did nothing.
> They broke policy.  You know, they make and break policy as
> they choose. ...
> ...
>
> It's Major Rushing and her subordinates went against their
> very policy that they're sworn — that's their sworn duty to
> take.

Plaintiff also testified that he never once spoke with Defendant Rushing about the

conditions in HCDF.  When he tried, he was told not to bother her; the window on the

door was taped over so he could not see when officers were present.  Ellis did not testify

2

as to any injuries he sustained as a result of the conditions he described, nor did he present any medical evidence.  Ellis only provided the above quoted testimony as the factual basis for his claims against Defendant Rushing, even after the Court asked him to further explain the facts upon which he relied.

Ellis's witnesses, Jones and Wright, also testified regarding the conditions at the HCDF.  Wright was housed at HCDF after his arrest on September 24, 2011, and he left HCDF on October 23, 2014.  He was booked and held in the holding tank for about 7-10 days when he first arrived at the jail.  He had to sleep on a blanket on the concrete floor while he was there and was housed with about "15 or more" inmates.  He was then transferred to A-2 pod.  According to Wright, the lights were off in the cells and in the showers, and electrical live wiring hung down from the ceilings.  He brought this to the attention of the housing deputy but nothing was done.  The inmates could pop the locks of the cell doors, and he feared for his safety.  Wright was fed his meals by trays being slid under the cell door, making him feel like an animal.  The entire pod was unsanitary. Wright admitted that he did file a lawsuit about his medical care while housed at HCDF, but he never filed a lawsuit about the food trays, or the popping locks, or any other conditions at HCDF.

Jones was housed at HCDF from January 15, 2010, until July 30, 2012.  He testified that the holding tank was overcrowded, unsanitary, and he had to sleep on the concrete floor.  He saw sewage coming out of the center of the floor in the holding cell. He was housed there for about 16 days.  He asked the staff to do something about the

3

conditions, but was told there was nothing they could do. He was sent to A-2 pod thereafter. The living conditions were also bad there. His meals were served by trays slid under the doors, and the food got dirty and dusty. Other inmates could pop the locks on the doors, and he witnessed inmates committing violence on other inmates as a result. Inmates would pop the locks and enter someone else's cell and steal their canteen or assault them. Jones testified that he was in constant fear of violence. Jones never filed a written grievance but he made verbal claims to staff members on duty at the time. Jones testified that Defendant Rushing was over the facility and had full knowledge of the poor conditions; yet, she did nothing. Her staff knew about the conditions, and she had briefings and a grievance system; Jones contends that she had to have known about the conditions.

Neither Ellis or Jones or Wright testified that they were injured as a result of their stay in the HCDF. Ellis put on no proof whatsoever of any injury that resulted from his conditions, even a *de minimus* injury.

Defendant Rushing testified that she was the jail administrator over the HCDF during the period Ellis was housed there, and her rank was Major. She testified regarding the conditions at the HCDF, denying that there were any cells with sewage flowing from the floor. A site maintenance crew was there, and she would have submitted a work order and had the problem fixed. Maintenance would have responded within an hour or so. If she knew about any problems at the jail, she submitted work orders, and maintenance quickly responded. According to Defendant Rushing, no inmate

4

was housed in the holding cell over 2-3 days, and usually only for 8-12 hours. She never saw an inmate sleeping on the floor, although some did lie on mattresses placed on concrete benches. She did not see over 10-12 prisoners in a holding cell. Defendant testified that there was a supply room in the booking area, and she had no problem getting cleaning supplies when she requested it. Officers were supposed to spray the showers down with cleaning products two-three times a week, and sometimes she ordered that the cells be cleaned even more often. The jail had a cleaning crew, with officers assigned to the crew; the cleaning cart rotated from pod to pod. Inmates were provided a time to shower at least three times per week.

Defendant testified regarding the Policies and Procedures of the HCDF, as well as portions of the General Orders of the Hinds County Sheriff's Office, which were admitted into evidence. These provided for discipline of her staff and other policies. Her expectations were that the staff would carry out the policies, and she would discipline any officers who did not follow the applicable policies in place. She testified that they had had problems with the locks on the cell doors, and a Mr. Robert Nelson had been hired to retrofit the locks and doors. This process began in early 2010, and Defendant Rushing knows of no problems with the locks after Mr. Nelson put the retrofits in place. The officers were trained about setting the tracks of the doors; as long as the officers followed procedures and properly locked the doors, inmates could not pop the locks after the corrections were made by Mr. Nelson. Defendant testified that she knew nothing about wires hanging from the ceilings in the showers and cells. Had she seen anything like this,

5

she would have had maintenance correct the problems.  She testified that she made rounds in the jail every day and talked to the officers frequently.  She was open to complaints, and inmates often talked to her.

### Application of the Law Regarding Conditions of Confinement

Pretrial detainees have a due process right not to be subjected to jail conditions that constitute punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996).  "Punishment"  may be "the manifestation of an explicit policy or restriction."  *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 453  (5th Cir. 2009).   It can also be manifested by a *de facto* policy if a pattern of conduct or condition is sufficiently extended or pervasive such that intent to punish may be presumed. *Id*. at 452.  Furthermore, the punishment is impermissible only if it bears no reasonable relationship to a legitimate governmental interest and if it causes a violation of a detainee's constitutional rights. *Duvall v. Dallas Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011).   A constitutional violation occurs when the complained of condition results in "serious deficiencies" in providing for the detainee's "basic human needs." *Shepherd*, 591 F.3d  at 454.

Yet, the Constitution does not mandate comfortable prisons. *Vega v. Parsley*, 700 F.Supp. 879, 883 (W.D. Tex. 1988).  The Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience. *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989).        Plaintiff is required to show at least some form of physical injury in

6

order to proceed with a conditions of confinement claim filed under the Prison Litigation Reform Act. *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999).  *See also Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003) (prisoner must establish a physical injury that is more than *de minimis*).   Ellis has failed to allege at trial that he suffered from such an injury.

The Court concludes that Plaintiff has failed to prove by a preponderance of the evidence that the conditions in the HCDF were so deficient as to him to constitute an intent to punish him.  Further, he set forth no evidence showing a *de facto* policy at the jail wherein an intent to punish could be presumed.  Ellis did receive adequate food and clothing while at HCDF; he had access to medical care and medical personnel.  Ellis put on no proof of severe weight loss or any other medical problems that are connected to his confinement at HCDF.  Even accepting Ellis's testimony as true regarding the conditions to which he was exposed, the Court finds that the conditions were not so severe as to constitute actual punishment by Defendant Rushing. The evidence fails to show that Ellis's conditions of confinement resulted in serious deficiencies in the provision of his basic human needs.

Ellis concedes that he never spoke to Defendant Rushing about the conditions but charges that she was responsible because she was "over" the jail and her subordinates knew about the problems. Supervisory liability may be established without direct participation in the alleged events "if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights, and is the moving force of

7

the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Ellis has failed to present sufficient proof of such a policy.

Ellis has had little association with Defendant Rushing, and he confirms that he has never actually spoken to her. By prior motion, Defendant Rushing contended that she was entitled to qualified immunity, and the Court agrees. No liability has been established against Defendant Rushing, in either her individual or official capacity, under the evidence presented in this case.

### Conclusion

As stated, the Court finds that Plaintiff has failed to carry his burden of proof as to his contention that his rights under the United States Constitution were violated due to the conditions in which he was housed at the Hinds County Detention Facility, and this case must be dismissed with prejudice.

IT IS, THEREFORE, ORDERED that Plaintiff's Complaint is dismissed with prejudice, and Final Judgment shall be entered on this date in favor of Defendant Mary Rushing and all other Defendants previously dismissed.

SO ORDERED, this the 18th day of February 2015.


/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE

8

Guard: Inmates escaping cells at Hinds Co. Detention Center | Jackson News - WAPT Home        6/26/15, 12:39 PM



SEARCH    Log In    Alerts    Mobile    Submit s Tip    se-    Like 130k    Follow

NEWS ⌄   WEATHER ⌄   U LOCAL ⌄   ON TV ⌄   MUST SEE ⌄                     MARKETPLACE ⌄

NOWCAST  Watch 16 WAPT News On Demand

Home / News / Local News / Jackson News

# Guard: Inmates escaping cells at Hinds Co. Detention Center

*Hinds Co. sheriff admits more guards needed to fix issue*

UPDATED 11:37 AM COT Jun 27, 2012

Share  0
Tweet  0
8+1  0

NEXT STORY

Gay marriage will not immediately happen in Miss., AG says

Text Size  A A A    Ad—intent |



Winner will receive $500 worth of gift certificates from area merchants



Play ▶

RAYMOND, Miss. — A guard at a Hinds County Detention Center claims that his co-workers are scared to go to work.

**MOST POPULAR**

SLIDESHOWS | STORIES | VIDEOS

1. **Mug shots: June arrests**



**RELATED**

- Gay marriage will not immediately...
- Vicksburg National Military Park...
- Man found beaten to death in Smith...
- Mississippi inmate loses appeal of...
- Hattiesburg mayor wants contempt case...

In an exclusive interview with 16 WAPT News' Tammy Estwick, the guard said that inmates "roam freely" at night and make the jail unfit to work in.

The guard, who asked to remain anonymous, showed 16 WAPT undercover video he filmed from inside the Hinds County Detention Center in Raymond.

It shows prisoners breaking out of their cells at night with little trouble. The guard said the situation is making some of his co-workers too afraid to go to work.

At one point the in video, an inmate was able to open a locked door with some kind of metal

2. 7 states with Confederate symbols on their flags
3. 20 cars that get the most tickets
4. Notorious escapes from U.S. prisons, jails
5. Abandoned amusement parks around the world
6. Bobbi Kristina Brown timeline of events

From the web

- **3 Things That Golf Pros Do That Amateurs Don't**
  Hank Haney University
- **How Much Money Do You Really Get from a Reverse Mortgage?**
  NewRetirement
- **3 Harmful Foods To Avoid**
  Slim Force 4 Supplement

Sponsored Links by Taboola

**Exhibit B**

implement.

The guard said, "At any point in time they can escape out of their doors."

He went on to say that the No. 1 problem is that not enough guards are on duty.

"It's maximum 66 inmates to one officer. A lot of them are scared a lot of them are stressed because of the conditions," the guard said.

Last week, Sheriff Tyrone Lewis showed 16 WAPT the same problem at the Hinds County Detention Center.

Lewis said his staff already knows how the inmates are breaking out of their cells. He said the inmates take metal from the ceiling and others used laundry bags to the same effect.

Just last Friday, Hinds County had its third inmate escape since January -- 38-year-old Fredrick Dooshay.

Lewis said he's got help on the way. He said 20 new recruits graduated from a training academy Tuesday.

"They're going into the facility that we need the most and that's the Hinds County Detention Center," Lewis said.

The sheriff wouldn't say exactly how many guards he needs for the jail to be secure but did admit that even with the new recruits, he needs more.

"I can tell you that we are close without compromising the safety of the employees out there since this is going to be on television were close and were going to continue to move toward our goal of full capacity," Lewis said.

The sheriff said he is working on a list of companies that can help with repairs to the Hinds County Detention Center.

He said he plans to give the list to the board of supervisors to expedite the needed repairs.



Copyright 2012 by WAPT.com All rights reserved. This material may not be published, broadcast, rewritten or redistributed.

TAGS   Hinds County Jail » Hinds County Jail Safety » Raymond Detention Center »

 Comments           Print

## Trending Offers and Articles

Ads by Adblade




Download a free toolkit and understand the essentials of


How Penny Stocks Make Millionaires Every Day...


Why didn't they tell drivers about this new rule? If you drive

FOLLOW US ON GOOGLE+



16 WAPT News Jackson

google.com/+16WAPTNews

WAPT.com is Central Mississippi's source for local and breaking news, weather and sports,

Follow    +1

+ 414

Guard: Inmates escaping cells at Hinds Co. Detention Center | Jackson News - WAPT Home

6/26/15, 12:39 PM

planning your estate.

less than 35 mi/day read this...

## RECOMMENDED

**FROM WAPT**

- Man charged with raping, impregnating stepdaughter
  WAPT.com
- Report: Autopsy shows Gray death a homicide
  WAPT.com
- Byram business uses social media to identify shoplifting suspects
  WAPT.com
- CDC: Red eyes while swimming caused by urine, not chlorine
  WAPT.com
- Rankin County judge's death ruled suicide
  WAPT.com
- Mayor's bodyguard arrested
  WAPT.com

**FROM AROUND THE WEB**           Promoted Links by Taboola

**87 Yr Old Trainer Shares Secret To Losing Weight**
[Athletic Greens Supplement Subscription]

**How Much Money Do You Really Get from a Reverse...**
[NewRetirement]

**3 Harmful Foods To Avoid**
[Slim Force 4 Supplement]

## COMMENTS                                            (µ) local

The views expressed are not those of this site, that station or its affiliated companies. By posting your comments you agree to accept our terms of use

**0 Comments**    **WAPT**                              **1 Login ▼**

♥ Recommend      ☞ Share                              Sort by Best ▼

⬤  | Start the discussion...                                                    |

                    Be the first to comment.

**ALSO ON WAPT**

**Couple faces child pornography, bestiality charges** 5 comments

**Firefighter accused of reporting fake fire for money** 2 comments

**Mississippi inmate loses appeal of death sentence** 7 comments

**Former pharmacy tech pleads guilty | Mississippi News** 1 comment

**AROUND THE WEB**                    WHAT'S THIS?

**Putin Unleashes the "Ultimate Black Swan" - China Follows** Money Morning

**Retirees Could be Entitled to a Lump-Sum Payment of $7,764** MoneyWise411

**With a Personal Body Camera, One Company Gets Lots ...** Venture Capital News

**How Older Women Are Losing Weight** ProbioSlim

⌐ Subscribe    ⬤ Add Disqus to your site    🔒 Privacy          **DISQUS**

## Latest from 16 WAPT

| News | FEATURED | WEATHER | **LATEST HEADLINES** |
|------|----------|---------|----------------------|

News
Weather
u local

**Best week in Washington: Obama's legacy**

June is legacy month for President Barack Obama.After the Supreme Court, for a second time, refused to gut the Affordable

On TV



Vicksburg National
Military Park stops
selling Confederate
flags



88°

**Jackson, MS**

⚠ Alerts (5)

🔒 Closings (0)

📡 Interactive Radar



Care Act and a deal with Republicans revived his trade agenda,
Obama is two-thirds of the way to three big wins that will help d...
Read More »



Celebs react to same-sex marriage decision 0min

Obama set to eulogize pastor in Charleston 5min

UN: Pot use on the rise in America 5min

Advertising



do **more** than watch

ConnecTV

DOWNLOAD FREE

SHOWCASE 16



**Clip & Share Live TV**
Make your own clips from live TV. Find
out how with ConnecTV. More



**Android Apps**
Download our news and weather apps
for your Droid now. More



**iPhone, iPad Apps**
Download our iPhone and iPad news
and weather apps now. More



do **more** than watch

ConnecTV

DOWNLOAD FREE



**EARTH FARE**
*Charleston*

More *organic*
PRODUCE THAN ANYONE ELSE
**FOR LESS**

CLICK HERE FOR
**$5 OFF**
PURCHASE OF $95 OR MORE

## WAPT Jackson

© 2015 Jackson
Hearst Television Inc.
on behalf of WAPT-TV

Site Map

**DISCLOSURES**
Privacy Policy
Terms of Use
Public Inspection File

**SECTIONS**
News
Weather
Sports
On TV
Auto
Marketplace

**TV STATION**
WAPT Jobs
About WAPT
Contact Us
News Team
Advertise

**SERVICES**
Email Sign-Up
Mobile
Social
RSS

**PARTNERS**
Hearst Television
Lakana
ABC
CNN

**HEARST** *television inc*   ◯ **LAKANA**   **CNN**   WU WEATHER UNDERGROUND